## STATE v. JEROME STEVENS.

157 N. W. (2d) 52.

March 8, 1968—No. 40,674.

*King & Flora,* for appellant.

*Robert C. Swenson,* County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Rogosheske, and Peterson, JJ.

NELSON, JUSTICE.

Appeal from an order of the District Court of Douglas County denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

Defendant, Jerome Stevens, was found guilty by a jury on October 12, 1966, of being the father of an illegitimate child born to one Kathleen Walberg, prosecutrix herein.

The prosecutrix and defendant worked at a nursing home in the Twin Cities area. Both were in their late teens at the time the child was conceived. Both admitted to having intercourse on two separate occasions and are in agreement as to where the acts occurred. The conflict in the testimony of the prosecutrix and defendant is with respect to when the acts of intercourse took place.

Initially the prosecutrix testified that the first act of intercourse took place in late March or early April 1965, and that the second act occurred around May 20, 1965. Her later testimony indicated that the first occurrence must have been in early May. Defendant contends that the first act occurred on May 17 and the second on June 18, 1965. The prosecutrix testified that her last menstrual period was in the middle of May. She also testified that she did not have intercourse with any man other than defendant from February to July 1965. However, at a later point in the trial, the state reopened its case and the prosecutrix testified that she had had intercourse with a fiance of one of her girl friends on or about July 17, 1965.

The doctor who delivered the child testified that the child was delivered after a full-term pregnancy, or about 270 days from the date of conception. He also testified that if the prosecutrix had intercourse

in May 1965 after her menstrual period, then the child was probably conceived at that time, but that if the intercourse occurred before or during the menstrual period, then the chance that the act would cause conception was very unlikely. The jury found defendant to be the father of the child. The issue is whether the evidence sustains the verdict.

■    Although the complaint in a paternity action appears to be criminal in form, it is well established that such proceedings are civil in nature and that the state is required to establish paternity only by a fair preponderance of the evidence. State v. Becker, 231 Minn. 174, 42 N. W. (2d) 704; State v. E. A. H. 246 Minn. 299, 75 N. W. (2d) 195.

■    Defendant contends that the prosecutrix' account of when and by whom the child was conceived has been so thoroughly impeached that the evidence does not sustain the verdict of guilty. Defendant refers to numerous examples, which are confirmed by the record, of inconsistencies and, in one instance, false testimony on the prosecutrix' part. Two examples will suffice: The prosecutrix testified that she had not had intercourse with one Neil Hickel when he and his fiance stayed at her apartment in June 1965. The court later permitted the state to reopen its case and the prosecutrix did admit she had had intercourse with Hickel on that occasion, although she said it was in July rather than June. She also testified that the first act with defendant was in late March or early April and that defendant had been working at the nursing home prior to that time. However, the testimony of defendant's former employer indicates that defendant did not leave his employment until April 20, 1965, at which time he left for employment at the nursing home.

In State v. Drescher, 219 Minn. 146, 17 N. W. (2d) 160, the prosecutrix alleged that the defendant was the father of her child and that the act causing conception had occurred in defendant's bedroom after a party celebrating his silver wedding anniversary. She testified that it had occurred while his wife had gone out of their farm home to look after her chickens at about midnight or 1 o'clock.

Defendant in that case denied having intercourse with the prosecutrix. The court there said (219 Minn. 150, 17 N. W. [2d] 162):

"Under all the circumstances under which the intercourse is alleged to have taken place, it is very clear that a verdict resting alone upon the uncorroborated statements of the girl should not be permitted to stand, in view of the unconvincing character of her testimony.

"Her improbable, contradictory, and inconsistent testimony is so manifestly and palpably contrary to the great weight of the evidence that we must conclude that not only has the state failed to establish the paternity of [the] child against the defendant by a preponderance of evidence, but that the record demonstrates that the trial court should, in the exercise of its discretion in the furtherance of substantial justice, have granted a new trial."

Granting that there are numerous inconsistencies in the prosecutrix' testimony in the instant case, it is not uncorroborated or improbable as the testimony was in the Drescher case. Both the prosecutrix and defendant admit to two acts of intercourse. Both admit that one of the acts took place in the latter part of May 1965 when the child might well have been conceived according to the testimony of the doctor who delivered the child. Thus, the testimony of the prosecutrix is both corroborated and probable with regard to the act of intercourse which occurred in May. As would be expected, her testimony is uncorroborated with respect to when her menstrual period occurred and this was a question of fact for the jury to determine.

The prosecutrix testified that during the month of July 1965, on a Sunday morning, she called defendant and asked him to come over. He did, and she testified that she asked him "what we were going to do" and defendant had said, "well, we'll get married." She said that they decided to go to the town of Nelson to see her parents. She told her parents at that time that "Jerry and I [are] going to get married." This conversation with her parents was in the presence of defendant. Her father inquired of the prosecutrix whether she had to get married, to which she answered yes. She further testified that her

parents then decided it would be best if she and defendant did marry.

That afternoon, however, defendant went to see another girl friend of his and the prosecutrix later told defendant that under the circumstances that had developed it would be best that they did not get married.

Defendant admitted under cross-examination that he did discuss marriage with the prosecutrix on the Sunday he had taken her to see her parents and admitted that he asked her to marry him on that occasion. He also admitted that on the same day he went to Osakis to see a girl friend whom he brought back with him when he picked up the prosecutrix. Apparently, this was the end of their discussion about marriage.

Certainly this testimony could well have had the effect of convincing the jury, in spite of inconsistencies in the prosecutrix' testimony, that defendant either knew or thought at the time that he was responsible for her pregnancy.

■ Since part of the prosecutrix' testimony was impeached by her own testimony on redirect and the testimony of defendant's prior employer with regard to when the prosecutrix first met defendant, the credibility of her testimony was brought into question. The general rule is, however, that the credibility of a witness is determined by the jury. In State v. Stevens, 248 Minn. 309, 80 N. W. (2d) 22, the defendant admitted having sexual relations with the prosecutrix but denied that these relations occurred during the period from August to October 1954, when the child was conceived. The prosecutrix denied that she had been in the company of another man during the month of September 1954, but later admitted spending part of an evening during September on a couch with another man in a home where she was baby-sitting. One of the children, a 13-year-old girl, testified that she thought that the prosecutrix and the man were having intercourse. The jury found the defendant guilty. On appeal this court held (248 Minn. 313, 80 N. W. [2d] 26):

"We have not overlooked that, on cross-examination, complainant

admitted, contrary to her testimony on direct, that she had seen defendant four times since November and that she had been with Tex Podvin subsequent to June 4, 1954, and had in fact spent some time with him on a couch in the home of defendant's sister. Although the rule is that, if the jurors believe that a witness has *knowingly* and *wilfully* testified falsely as to a material fact, they *may* disregard his entire testimony except as corroborated by other credible evidence, the credibility of such a witness is, nevertheless, for the jury and they may believe or disbelieve his testimony as to other facts as they deem it worthy or unworthy of belief. Bearing in mind that the credibility of witnesses is for the jury and that we must take the conflicting evidence in the light most favorable to the verdict, we cannot say that the testimony of the complainant was so obviously untrue that it was entitled to no credence and that the evidence as a whole does not sustain the verdict."

The trial court in denying the motion of defendant for judgment notwithstanding the verdict or a new trial stated in a memorandum accompanying its order:

"The defendant's admission that he had intercourse with her and without the use of contraceptive devices, in the manner which he described, is enough in my opinion to corroborate the claim of plaintiff. In some decisions the Supreme Court has commented upon the failure of the State to call certain available witnesses in the interests of proving the truth or untruth of certain factual claims. This is not true in the instant case, and there is no evidence that other witnesses would have been available. In fact, the circumstances of the two dates between the complaining witness and the defendant are not in substantial dispute, the only dispute being as to the exact date.

"No issue is taken by counsel for defendant as to the instructions given the jury, and on the basis of these instructions I think the jury was justified in finding that the defendant was the father of the complainant's child."

In State v. Stevens, *supra,* defendant denied any sexual acts with the prosecutrix during the time of conception, but in the instant case,

defendant admits intercourse during late May when the evidence indicates the child could have been conceived.

The evidence when considered as a whole appears to be sufficient to sustain the jury's verdict.

Affirmed.