STATE OF NEBRASKA, APPELLEE, v. LEONARD L. BELITZ, APPELLANT.

278 N. W. 2d 769

Filed May 8, 1979.   No. 42366.

Walter J. Matejka, for appellant.

Herbert M. Fitle, City Attorney, Gary P. Bucchino, City Prosecutor, and Richard M. Jones, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

On December 23, 1977, the defendant below, Leonard L. Belitz, was charged in the municipal court of the city of Omaha, under a city complaint, for violating section 25.11.010 of the Omaha municipal code, of the offense of "Assault; Battery." Trial was had before Walter Cropper, judge of the municipal court of the city of Omaha, on defendant's plea of not guilty. The court found the defendant guilty and sentenced him to serve 180 days in the county jail. Defendant then appealed to the District Court for Douglas County, where, following a hearing before Judge Theodore Richling, defendant's conviction and sentence were affirmed. Defendant has now appealed to this court. We affirm.

Section 25.11.010 of the Omaha municipal code, under which defendant was charged and convicted, was enacted on July 18, 1967, and reads as follows: "25.11.010 Assault; Battery. It shall be unlawful for any person purposely or knowingly to: (a) strike or attempt to strike another person with the intent to

cause bodily injury; or (b) cause or attempt to cause bodily injury to another person; or (c) place another person in fear of imminent bodily harm; or (d) touch the sexual or other intimate parts of the body of another person without his consent for the purpose of arousing or gratifying the sexual desire of either party.''

The foregoing ordinance was enacted by the city of Omaha pursuant to authority granted to it as a home rule city under the Nebraska statutes. See § 14-101 and 14-102, R. R. S. 1943. Section 14-102, R. R. S. 1943, provides in part: ''In addition to the powers granted in section 14-101, metropolitan cities, as therein defined, shall have power by ordinance; * * * Police regulation in general. (25) To make and enforce all police regulations for the good government, general welfare, health, safety and security of the city and the citizens thereof, in addition to the police powers expressly granted herein; and in the exercise of the police power, they may pass all needful and proper ordinances, and shall have power to impose fines, forfeitures, penalties, and imprisonment at hard labor for the violation of any ordinance, and to provide for the recovery, collection and enforcement thereof; and in default of payment to provide for confinement in the city or county prison, workhouse or other place of confinement with or without hard labor as may be provided by ordinance; * * *.'' In addition subparagraph (22) of section 14-102, R. R. S. 1943, further provides: ''Disorderly conduct. Rule (22) To provide for the punishment of persons disturbing the peace and good order of the city by clamor and noise; by intoxication, drunkness, fighting or using obscene or profane language in the streets or other public places, or otherwise violating the public peace by indecent or disorderly conduct, or by lewd and lascivious behavior; * * *.'' There can be little question that the city of Omaha had authority to enact the above-quoted ordinance under

which the defendant was convicted. The penalty provided for violation of the foregoing ordinance is set out in section 25.03.010 of the Omaha municipal code which provides as follows: "General Penalty. A person convicted of an offense under this title may be sentenced to pay a fine not to exceed $500 or to be imprisoned for a term not to exceed 6 months, or both, in the discretion of the court. * * *." Since the possible penalty includes imprisonment, it is clear that the offense involves a criminal prosecution both in form and substance. See State v. Kolosseus, 198 Neb. 404, 253 N. W. 2d 157 (1977). It is likewise clear that the offense with which the defendant was charged was a misdemeanor. Section 29-102, R. R. S. 1943 (Reissue 1975), in effect at the time of the commission of the offense involved in this case, provided as follows: "The term felony signifies such an offense as may be punished with death or imprisonment in the Nebraska Penal and Correctional Complex. Any other offense is denominated a misdemeanor."

It is clear from an examination of section 25.11.010 of the Omaha municipal code that it is primarily an assault and battery ordinance, though specifying four different ways in which the assault or battery may be consummated. Only the last of the four items specified is sexually related. Under the complaint against the defendant filed on December 23, 1977, by the city prosecutor, all four of the elements of the offense are alleged against the defendant. It is clear from a review of the evidence in the record that although most of the emphasis of the testimony was with reference to the defendant touching the sexual or other intimate parts of the victim, yet there was also evidence, sufficient to sustain the charge against the defendant under the ordinance, that he placed the victim in fear of imminent bodily harm, and also caused or attempted to cause bodily injury to her, as will be hereinafter discussed.

The record reveals that the defendant, who was a former friend and acquaintance of the victim and her husband, came to their home in Omaha on December 8, 1977, the victim's husband being absent at the time; and after a conversation with the victim, according to her testimony, asked her if she would make love to him which she refused to do. He persisted in his amorous advances over her protests and requests that he stop and leave her alone. He then picked her up and started to carry her toward the bedroom. She struggled and tried to get away from him. He subsequently succeeded in having sexual relations with her, although this is denied by the defendant. The victim testified as follows: "Q. What were you doing, resisting? A. I was kicking and pushing. Q. Were you saying anything to him? A. I was telling him to leave me alone. Q. Okay, and then what happened? A. He continued to try to get my clothes off me, *he was starting to really hurt me.* Q. Were you afraid at this time? A. Yes, I was very much afraid. * * * Q. What happened then? A. *By then I was very frightened that he was going to hurt me physically, very badly, so I stopped resisting, so as not to be hurt.*" (Emphasis supplied.) It seems clear the foregoing testimony of the prosecuting witness, if believed, would alone be sufficient to sustain a conviction of the defendant under the foregoing ordinance on the basis that he placed the victim "in fear of imminent bodily harm," and also "that he caused or attempted to cause bodily injury" to the victim.

Counsel for defendant has argued in his brief and also in his oral argument that prior to the filing of the assault and battery charge in the municipal court the matter had been reviewed by the county attorney's office in Douglas County, but that office had declined to file a rape or sexual assault charge, being a felony, against the defendant. This may have in fact been the case; however, we point out

that there is no evidence of this fact in the record, except the argument of defendant's counsel to the court at the conclusion of the trial in municipal court.

Defendant's principal assignment of error in this case is that under section 29-615, R. R. S. 1943, the court should have stopped the proceedings and sat as an examining magistrate to determine whether the defendant should have been bound over to District Court under the sexual assault statutes, sections 28-408.01 to 28-408.05 inclusive, R. R. S. 1943, his theory being that the offense for which the defendant was tried and convicted was in fact a felony under the sexual assault statutes, and hence not cognizable by the municipal court.

Section 29-615, R. R. S. 1943, relied upon by the defendant, provides as follows: "If, in the progress of any trial before a county or municipal court it shall appear that the defendant *ought* to be put upon his trial for an offense not cognizable before such court, the court *shall* immediately stop all further proceedings before him and proceed as in other criminal cases exclusively cognizable before the district court." (Emphasis supplied.) Several things may be said with regard to defendant's contention. In the first case, defendant states in his brief that he "reminded" the court that it had the power to bind the defendant over to the District Court for trial if it found that a rape had occurred. The record does not reveal, however, that he ever moved or requested that the court do so. The record reveals that during the trial the court sustained an objection made by opposing counsel to a question put to a witness by counsel for the defendant. Counsel for defendant then stated: "Well, I think it's material for this reason, Your Honor, this Court, on a charge like this, is not only sitting as a hearer of the facts for this particular charge, but as the Court's well aware, if they find from the evidence that a rape has

occurred, they *can* bind this Defendant to stand trial in the District Court. The Court has that type of jurisdiction." (Emphasis supplied.) The foregoing constitutes the only reference in the record to the issue raised by the defendant, and it is obvious that it falls far short of a request that the court stop the trial and proceed as an examining magistrate. However, it is apparently the contention of the defendant that under the foregoing statute, it was mandatory for the court to do so, whether requested or not. We do not agree. In the first place, we are of the opinion that the two offenses were separate and distinct offenses, notwithstanding there may have been sexual aspects contained in both offenses. We do not believe the foregoing statute necessarily requires that a defendant be charged with the more serious offense, even though the court has the discretion to do so. Although the use of the word "shall" in the foregoing statute might indicate that it was mandatory for the court to stop proceedings, yet we note the statute also contains a prior condition that if "it shall appear that the defendant *ought* to be put upon his trial for an offense not cognizable before such court * * *." (Emphasis supplied.) Black's Law Dictionary (4th Ed.), defines the term "ought" as follows: "This word, though generally directory only, will be taken as mandatory if the context requires it." We do not believe the context requires the word be interpreted in a mandatory sense as used in the statute under consideration, but only in a permissive sense allowing discretion to the trial judge. Larson v. State, 93 Neb. 242, 140 N. W. 176 (1913), relied upon by the defendant, is distinguishable because of the fact that in that case the county attorney had moved the court to stop all further proceedings and conduct a hearing for the defendant on an offense not cognizable before a magistrate; and the court acceded to the request. As previously stated this was not done in the instant case. There

are many offenses which contain elements, common to both misdemeanors and felonies, and which might legitimately be filed either as a misdemeanor or a felony. It is necessary then that some discretion lie with the prosecutor and the court. In State v. Williams, 188 Neb. 565, 198 N. W. 2d 187 (1972), we stated: "It is the clear responsibility of prosecutors to examine the evidence, the statutes, and the cases to make a proper determination of the charge which the evidence will support." In section 3.9(b) of the American Bar Association Standards Relating To The Prosecution Function it is stated: "The prosecutor is not obliged to present all charges which the evidence might support. The prosecutor may in some circumstances and for good cause consistent with the public interest decline to prosecute, notwithstanding that evidence exists which would support a conviction. * * *." In the commentary to that section it is stated: "Nor is it desirable that he prosecute all crimes at the highest degree available. Necessarily crimes are defined in broad terms that encompass situations of greatly differing gravity. Differences in the circumstances under which the crime took place, the motives or pressures activating the offender, mitigating factors of the situation or the offender's age, prior record, general background, his role in the offense, and a host of other particular factors require that the prosecutor view the whole range of possible charges as a set of tools from which he must carefully select the proper instrument to bring the charges warranted by the evidence. In exercising discretion in this way, the prosecutor is not neglecting his public duty or discriminating among offenders. The public interest is best served and even-handed justice best dispensed not by a mechanical application of the 'letter of the law' but by a flexible and individualized application of its norms through the exercise of the trained discretion of the prosecutor as an administrator of jus-

tice." We conclude that in this case the city prosecutor did not abuse his discretion in filing the charge against the defendant as a misdemeanor under the city ordinance, rather than a felony under the sexual assault statutes, as defendant's counsel contends should have been done.

Defendant also argues that the State of Nebraska has preempted the field of regulating conduct characterized as sexual assault, and therefore no assaults established by city ordinance and relating to or encompassing sexual acts are cognizable in municipal court. In support of this proposition he relies principally upon the case of Midtown Palace, Inc. v. City of Omaha, 193 Neb. 785, 229 N. W. 2d 56 (1975). That case is clearly distinguishable from the instant case as the applicable statute there, being 28-926.33, R. R. S. 1943, specifically provided that "* * * no municipality, county, or other governmental unit within this state shall make any law, ordinance or regulation relating to obscenity, or licenses or taxes respecting the obscene work, material, conduct or like performance as regulated by the state under sections 28-926.11 to 28-926.33. * * *." Here, the State of Nebraska specifically delegated to the city of Omaha the power to enact the ordinance in question.

In addition to the powers given to the city of Omaha under its charter previously cited, section 14-102.01, R. R. S. 1943, provides: "A city of the metropolitan class may make all such ordinances, by-laws, rules, regulations, and resolutions not inconsistent with the general laws of the state, as may be necessary or expedient, in addition to the special powers otherwise granted by law, for maintaining the peace, good government, and welfare of the city and for preserving order, securing persons or property from violence, danger, and destruction, for protecting public and private property, for promoting the public health, safety, convenience, comfort,

morals, and general interests, and welfare of the inhabitants of the city." We believe the ordinance under which the defendant was charged and convicted falls within the purview of the language of the above section and that the city's assault and battery ordinance is not inconsistent with, nor repugnant to, the general laws of the state; and that it is necessary for the maintenance of peace, good government and welfare of the city, and for preserving order. The defendant was convicted under that ordinance by a preponderance of the evidence, after a trial to the court. Finding no error, the judgment and sentence must be affirmed.

AFFIRMED.