In re Interest of Verle O., also known as Tony O., alleged to be a mentally ill dangerous person. Verle O., also known as Tony O., appellant, v. Mental Health Board of the 12th Judicial District, appellee.

691 N.W.2d 177

Filed January 11, 2005.   No. A-03-1371.

Susan L. Kirchmann for appellant.

David L. Wilson, Kimball County Attorney, for appellee.

SIEVERS, MOORE, and CASSEL, Judges.

PER CURIAM.

## INTRODUCTION

Verle O., also known as Tony O., appeals the order of the Kimball County District Court, which affirmed the order of the Mental Health Board of the 12th Judicial District (the Board) finding Verle to be a mentally ill dangerous person and committing him to involuntary inpatient sex offender treatment. We address the consequences of the fact that Verle's prior sex offense conviction occurred as a result of a plea of nolo contendere.

## BACKGROUND

In 1993, Verle was charged with attempted first degree sexual assault on a child, a Class III felony. Verle entered a plea of no contest and was sentenced to incarceration for 6 to 18 years.

On September 12, 2002, the State filed a petition with the Board, alleging that Verle was "believed to be a mentally ill and dangerous person by reason of his behavior, including repeated incidents of sexual assault of children." Following a hearing, the Board found "clear and convincing proof that [Verle] is a mentally ill dangerous person" and that "neither voluntary hospitalization nor other alternatives less restrictive of [Verle's] liberty than a Mental Health Board ordered treatment disposition are available or would suffice to prevent the substantial risk of harm to others." The Board found, based on the testimony at the hearing, that Verle suffered from pedophilia and narcissistic personality disorder and that he should be committed to involuntary inpatient sex offender treatment.

Verle appealed the Board's order to the district court for Kimball County, alleging that the Board erred by receiving certain evidence and that insufficient evidence was adduced during the hearing to adjudicate him as a mentally ill dangerous person requiring involuntary inpatient treatment. The district court found that the allegations of error in the receipt of evidence were without merit and that the Board's decision was supported by the evidence. Therefore, the court affirmed the Board's decision. Verle now appeals to this court.

## ASSIGNMENTS OF ERROR

Verle asserts, reassigned and restated, that (1) the use of Verle's 1993 or 1994 no contest conviction "violated Nebraska statutory and case law" as well as public policy, (2) the State failed to meet its burden to prove that he was mentally ill and dangerous, and (3) the testimony regarding Verle's narcissistic personality disorder was "unduly prejudicial and, therefore, irrelevant."

## STANDARD OF REVIEW

The district court reviews the determination of a mental health board de novo on the record. *In re Interest of Kochner*, 266 Neb. 114, 662 N.W.2d 195 (2003). In reviewing a district court's judgment under the Nebraska Mental Health Commitment Act,

appellate courts will affirm the district court's judgment unless, as a matter of law, the judgment is unsupported by evidence which is clear and convincing. *Id.*

## ANALYSIS

*Evidence of Recent Violent Acts.*

██ "Before a person may be committed for treatment by a mental health board, the board must determine that the person meets the definition of a mentally ill dangerous person as set out in [Neb. Rev. Stat.] § 83-1009 [(Reissue 1999)]." *In re Interest of Kochner,* 266 Neb. at 120, 662 N.W.2d at 201. (Neb. Rev. Stat. § 83-1009 (Reissue 1999) has subsequently been repealed, and its successor can now be found at Neb. Rev. Stat. § 71-908 (Cum. Supp. 2004), operative July 1, 2004. Specifically, 2004 Neb. Laws, L.B. 1083, § 28, amended the language of the former § 83-1009 to read, "Mentally ill and dangerous person means a person who is mentally ill or substance dependent and because of such mental illness or substance dependence presents . . . ," where § 83-1009 had previously read, "Mentally ill dangerous person shall mean any mentally ill person, alcoholic person, or drug-abusing person who presents . . . .") The statutory definition of mentally ill dangerous person requires the State to show that the person (1) suffers from a mental illness and (2) presents a substantial risk of harm to others or to himself within the near future as manifested by evidence of recent violent acts. See, § 83-1009; *In re Interest of Kochner, supra.*

At the hearing, a psychiatrist opined without objection that he had a "clinical opinion" based on a reasonable degree of medical and psychiatric certainty that Verle suffered from the mental illnesses of pedophilia and narcissistic personality disorder. The psychiatrist also testified that his opinion, based on a reasonable degree of medical certainty, was that Verle "would be a danger to others in regard to his diagnosis of pedophilia, in particular children, probably age 15 and below in the future." However, § 83-1009 requires more than an expert's opinion that the subject of the proceedings is "dangerous."

██ Under § 83-1009, there must be a recent violent act, a threat of violence, or an act placing others in reasonable fear of such harm in order to find that a person is dangerous. In short, it must

be shown that Verle has actually been dangerous in the recent past and that such danger was manifested by an overt act or attempt or threat to do substantial harm to himself or to another. See *In re Interest of Blythman*, 208 Neb. 51, 302 N.W.2d 666 (1981). "In order for a past act to have any evidentiary value it must form some foundation for a prediction of future dangerousness and be therefore probative of that issue." *Id.* at 58, 302 N.W.2d at 671.

■ "[A]ny act that is used as evidence of dangerousness must be sufficiently probative to predict future behavior and the subject's present state of dangerousness." *Id.* at 59, 302 N.W.2d at 672.

The Board found clear and convincing evidence that Verle "is a mentally ill dangerous person" and that Board-ordered inpatient treatment was necessary to "prevent further harm to [himself] or to others." The Board explained that Verle "has been diagnosed with Pedophilia and Narcissistic Personality Disorder," but failed to identify any specific recent violent act or threat of violence that would make Verle dangerous, as required by § 83-1009.

Similarly, the district court did not make a finding as to any specific recent violent act or threat of violence. The district court, relying on *In re Interest of Blythman, supra*, found that while Verle had not performed any act in the past 9 years indicating that he was dangerous, "an untreated pedophile remains currently dangerous even though no incidences have occurred during extended incarceration. Clearly, as [Verle] denies he is a pedophile, he remained untreated. Therefore, he is dangerous." The flaw with this reasoning is that while *In re Interest of Blythman* may arguably support the conclusion that an "act" 9 years earlier is "recent," which we need not decide, *In re Interest of Blythman* does not support Verle's commitment and loss of liberty because of his status as "an untreated pedophile." Commitment on such basis has due process problems; plus, it was condemned in *In re Interest of Blythman*.

The district court partially framed the question as "whether an expert opinion which relies upon a conviction based on a no contest plea can be relied upon in a mental health hearing to determine if a person is mentally ill." It seems evident that the district court similarly assumed that Verle's conviction based upon his plea of no contest provided the required evidence of recent violent

acts. Accordingly, we consider the role and effect of evidence of a conviction, based on a plea of no contest, in a subsequent civil commitment proceeding.

*Plea of Nolo Contendere.*
    ■■■ Verle asserts that the court erred in using his "1993 no contest conviction" against him in the Board's proceedings and in admitting the record of the conviction, consisting of exhibits 1 through 4. Mental health board proceedings are governed by the Nebraska Evidence Rules. See Neb. Rev. Stat. § 83-1059 (Cum. Supp. 2002) (repealed by 2004 Neb. Laws, L.B. 1083, § 75, operative July 1, 2004, and recodified at Neb. Rev. Stat. § 71-955 (Cum. Supp. 2004)). Neb. Evid. R. 410, Neb. Rev. Stat. § 27-410 (Reissue 1995), provides that evidence of a defendant's plea of or offer of a plea of nolo contendere, and evidence of statements made in connection with such a plea or offer, are not admissible in any civil or criminal action, case, or proceeding against that defendant. However, in *State v. Methe*, 228 Neb. 468, 472, 422 N.W.2d 803, 807 (1988), the Nebraska Supreme Court explained that rule 410 "does not prohibit the use of the *conviction* which results from a nolo contendere plea." (Emphasis supplied.)
    ■■■ At the hearing before the Board, the State offered exhibits 1 through 4: the amended information; the petition to enter a plea of no contest, which petition contains a recitation of a factual basis contended by the prosecutor; and the court's two journal entries regarding entry of the plea and sentencing, respectively. "If . . . a judgment [of conviction] has been entered on the plea, the record is competent evidence of the fact of conviction." *State ex rel. Nebraska State Bar Assn. v. Mathew*, 169 Neb. 194, 197, 98 N.W.2d 865, 867 (1959). Verle objected to these exhibits "on the basis of relevance," as well as asserting that their probative value was outweighed by their prejudicial effect. Citing *Mathew*, Verle also objected to the exhibits on the ground that "a plea of nolo contendere may not be used in evidence in a civil action against the party making the plea." We consider this statement sufficient to preserve an objection to the exhibits under rule 410.
    ■■■ A plea of no contest does not admit guilt, but does not contest the charge. The plea consents to the entry of a judgment of

guilt. See 4 Clifford S. Fishman, Jones on Evidence Civil and Criminal § 23:7 (7th ed. 2000). See, also, *State v. Obst*, 12 Neb. App. 189, 198, 669 N.W.2d 688, 696 (2003) (" '[t]he difference between the plea of nolo contendere and a plea of guilty appears simply to be that, while the latter is a confession or admission of guilt binding [the] accused in other proceedings, the former has no effect beyond the particular case' "), quoting 22 C.J.S. *Criminal Law* § 399 (1989). By entering a plea of nolo contendere, Verle avoided making any admissions of fact; therefore, the facts contained in exhibits 1 through 4, including the factual basis for the plea, may not be considered as admissions. See 4 Fishman, *supra*.

In *State v. Methe, supra*, the Nebraska Supreme Court determined that evidence of a prior conviction for intimidation by telephone call was admissible in a later prosecution for another instance of intimidation by telephone call for two purposes: (1) to corroborate the victim's testimony on the issue of identity and (2) to establish a motive for calling the victim as well as the defendant's intent to intimidate the victim. For the second purpose, the precise nature of the prior conviction would make no difference. However, the elements of the crime underlying the prior conviction and the identities of the perpetrator and the victim would be essential to consideration of the conviction for the first purpose. Thus, we view *Methe* as allowing use of a prior conviction, including the allegations of the indictment, information, or complaint leading thereto. See *State v. Martinez*, 4 Neb. App. 192, 541 N.W.2d 406 (1995) (equating criminal "pleading" to charging document), *aff'd* 250 Neb. 597, 550 N.W.2d 655 (1996). We determine that rule 410, as explained by *Methe*, authorized the receipt in evidence of the record of Verle's prior conviction, which record included the amended information (exhibit 1), the journal entry memorializing the acceptance of the no contest plea (exhibit 3), and the journal entry upon the judgment imposing sentence (exhibit 4).

However, rule 410 also prohibits admission into evidence of "statements made in connection with [a] plea [of no contest]." Exhibit 2 consisted of Verle's statements in connection with the no contest plea and contained the prosecutor's "statement" of a factual basis for that plea. Rule 410 prohibited the use of these

statements as evidence in the civil commitment proceeding, and exhibit 2 should not have been received in evidence.

A critical issue before the Board, and before the district court upon its de novo review, was the existence of "evidence of recent violent acts or threats of violence," see § 83-1009(1). At oral argument, the State maintained that the evidence of such recent violent acts was supplied by exhibit 2, Verle's statements in connection with the plea of no contest, and specifically by Verle's statements acknowledging the prosecutor's "statement" of a factual basis for that plea. As we have explained, that evidence was improperly received, because rule 410 prohibits the later use of a defendant's statements made in connection with his earlier plea of no contest.

While the evidence of Verle's prior conviction was not precluded by rule 410, the properly received evidence (exhibits 1, 3, and 4) establishes merely that Verle was convicted in 1993 or 1994 and sentenced in 1994 for the charge of criminal attempt of first degree sexual assault on a child. The only details of the crime provided by the properly received exhibits were the allegations of the amended information, which stated that Verle

> "on or about the 16th day of February A.D. 1993, in the County of Kimball and State of Nebraska, then and there being did then and there intentionally engage in conduct which, under the circumstances as he believed them to be, constituted a substantial step in a course of conduct intended to culminate in his commission of the crime of First Degree Sexual Assault on A Child, [Neb. Rev. Stat. §] 28-319(1)(c) [(Reissue 1989)], a Class II Felony . . . ."

That knowledge fails to provide clear and convincing evidence of recent violent acts as required by the commitment statute. Indeed, because of the inchoate nature of the offense of criminal attempt, the allegation and resultant conviction provide literally no information regarding the nature and character of the acts actually performed. Thus, the mere fact of conviction fails to establish, by the requisite standard of clear and convincing evidence, performance of recent violent acts.

Of course, absent a showing to the contrary, it is presumed that the trial court disregarded all incompetent and irrelevant evidence. See *In re Interest of Ty M. & Devon M.*, 265 Neb.

150, 655 N.W.2d 672 (2003). However, the district court recognized that "the nearly sole fact upon which the doctors diagnosed pedophilia is the conviction in 1994 based upon [Verle's] 'Nolo Contender[e]' plea." The district court also equated exhibits 1 through 4 to evidence of the conviction. Thus, it is apparent that the district court relied upon exhibit 2, and the State clearly relied upon that evidence to meet its burden to establish recent violent acts.

We recognize that the Nebraska Supreme Court has never expressly discussed whether it is proper to remand for a new hearing where evidence, relied upon by the State to establish a critical requirement for commitment, was improperly admitted. In *In re Interest of Tweedy*, 241 Neb. 348, 488 N.W.2d 528 (1992), the Nebraska Supreme Court reversed a district court order upholding a commitment, determining that the admitted evidence failed to establish the subject's dangerousness. The Supreme Court remanded to the district court with directions to remand to the mental health board, which was directed to accord the subject a new hearing or to order him released from custody. In *In re Interest of S.B.*, 263 Neb. 175, 639 N.W.2d 78 (2002), the district court had reversed and remanded for further proceedings where the mental health board improperly relied upon telephonic testimony of the mental health professional. The Nebraska Supreme Court agreed that the telephonic testimony was improperly admitted and that without such testimony, the evidence was insufficient to support the commitment. The Supreme Court therefore affirmed the district court's order reversing and remanding for further proceedings. We recognize that in neither of these cases did the Supreme Court expressly discuss the propriety of remanding for a new hearing. Compare, e.g., *In re Interest of Ely*, 220 Neb. 731, 371 N.W.2d 724 (1985) (where evidence that subject had no place to stay and no source of income was improperly admitted, evidence was insufficient; where evidence was insufficient, it was not necessary to decide whether not having job or home could be basis for finding dangerousness; cause was remanded with directions to dismiss petition).

We do find some authority from other states authorizing a remand for a new civil commitment hearing where the evidence was insufficient but the record indicated that there may

have been other evidence that the State could have presented. See, e.g., *Love v. State*, 90 S.W.3d 236 (Mo. App. 2002) (State's evidence was insufficient to meet definition of mental abnormality, but record indicated that there may have been other evidence State could have presented to make submissible case, so new trial was required); *Johnson v. State*, 58 S.W.3d 496, 500 (Mo. 2001) (Missouri Supreme Court found that testimony of one of State's experts was improperly admitted and that with that evidence excluded, State had failed to show that subject was sexually violent predator, so cause was remanded for new trial because "[t]here may be other evidence that the [S]tate can present to make a submissible case"); *In re J.P.*, 339 N.J. Super. 443, 772 A.2d 54 (2001) (cause remanded for new hearing because trial judge's determination to commit subject was based upon inadmissible actuarial instruments and upon expert testimony consisting of little more than institutional record review). Compare *Turner v. Superior Court*, 105 Cal. App. 4th 1046, 130 Cal. Rptr. 2d 300 (2003) (court found insufficient evidence to support probable cause finding and ordered that commitment petition be dismissed rather than remanding for new probable cause hearing, since no legal error had permeated proceedings below).

We think it is evident from the record that a possibility exists that evidence of Verle's acts underlying the 1993 or 1994 conviction could have been produced and may have been sufficient to establish dangerousness. We will therefore direct, as did the Nebraska Supreme Court in *In re Interest of Tweedy*, 241 Neb. 348, 488 N.W.2d 528 (1992), that the cause be remanded to the district court with directions to remand to the mental health board to accord the appellant a new hearing or to order him released from custody.

█ Because we conclude that the documentary evidence of Verle's statements made in connection with the plea of no contest pertaining to Verle's 1993 or 1994 conviction was improperly admitted and considered, we need not address Verle's other assignments of error. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. See *King v. Crowell Memorial Home*, 261 Neb. 177, 622 N.W.2d 588 (2001).

266

## CONCLUSION

Therefore, for the foregoing reasons, we reverse the decision of the district court and remand the cause to the district court with directions to remand to the Board, which shall accord Verle a new hearing or order him released from custody.

REVERSED AND REMANDED WITH DIRECTIONS.